# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAVID WHITEHEAD and TERRI WHITEHEAD,
        Plaintiffs,

v.                            Case No. 15-C-0261

DISCOVER BANK and MESSERLI & KRAMER,
        Defendants.

## DECISION AND ORDER

David and Terri Whitehead have filed a complaint under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and the Wisconsin Consumer Act, Wis. Stat. § 427.104, against Discover Bank and the law firm of Messerli & Kramer. Before me now is the defendants' motion to dismiss the complaint.

## I. BACKGROUND

Discover Bank obtained two default judgments against David Whitehead in state court in Walworth County, Wisconsin. The first judgment was entered in December 2011, and the second judgment was entered in January 2012. In March 2014, Discover Bank, which at that time was represented by Messerli & Kramer, commenced two separate earnings-garnishment actions against Whitehead. The papers necessary to commence the garnishments were filed under the case numbers for the actions in which Discover Bank had obtained the judgments. Discover Bank served notice of the garnishments on Whitehead's employer, General Dynamics. Discover Bank did not serve notice of the garnishments on Whitehead personally. The defendants assert that they served notice of the garnishments on a lawyer, George Peek, who had represented Whitehead during the

proceedings leading up to the default judgments, but this fact is not alleged in the complaint. In any event, Whitehead learned of the garnishments when General Dynamics sent notice of the garnishments to him.

After receiving notice of the garnishments, Whitehead, now represented by different counsel, filed answers to the garnishments in both cases. Along with his answers, Whitehead filed motions to reopen the underlying cases in which the judgments were entered. As grounds for reopening the cases, Whitehead argued that the judgments were obtained improperly. Whitehead also sought leave to file a counterclaim against Discover Bank alleging violations of the Wisconsin Consumer Act. One of the alleged violations of the Consumer Act that Whitehead sought to assert as a counterclaim was based on Discover Bank's alleged failure to properly serve notice of the garnishments on him.

After Whitehead filed his answers to the garnishments, motions to reopen, and counterclaims, Whitehead asked General Dynamics to stop garnishing his earnings pending a court hearing on these matters. General Dynamics informed Whitehead that it would continue garnishing his earnings unless it received a court order or stipulation of the parties stating that the garnishments should be put on hold. Whitehead then asked Discover Bank and Messerli & Kramer to enter into a stipulation providing that the garnishments would cease pending a hearing on the answer and motion. The defendants did not respond to this request, and General Dynamics continued to garnish Whitehead's earnings.

Meanwhile, the state court held a hearing in one of the two cases. The court denied the motion to reopen the case, reasoning that the request to set aside the judgment was untimely, as it was filed two years after the judgment had been entered. As far as the

present record reveals, the court did not rule on any of the matters raised in Whitehead's answer to the garnishment or counterclaims. Rather, the court in its minutes from the hearing stated that "the issue relating to garnishment can be filed in the small claims case." Armstrong Decl. Ex. 1 at p. 4 of 6. The "small claims case" was the other case in which Discover Bank had obtained a default judgment against Whitehead and commenced an earnings garnishment. With respect to that case, a hearing was scheduled on the garnishment answer for August 7, 2014. However, prior to that date, Whitehead filed a petition under Chapter 128 of the Wisconsin Statutes, which allows wage earners to amortize debts over a period of up to three years. See Wis. Stat. § 128.21. While a debtor is making payments under a Chapter 128 plan, creditors are prohibited from using execution, attachment, or garnishment to collect the debts that are subject to the plan. Once Whitehead filed for relief under Chapter 128, General Dynamics and Discover Bank stopped garnishing his wages. For this reason, the hearing on the garnishment in the small-claims case was cancelled.

In March 2015, the Whiteheads commenced the present action against Discover Bank and Messerli & Kramer.[1] Their claims are based on acts and omissions committed by Messerli & Kramer in the course of the garnishments. First, the Whiteheads contend that Messerli & Kramer violated both the FDCPA and the Wisconsin Consumer Act when it commenced the garnishments but failed to serve a garnishment form upon Whitehead, as required by the garnishment statute. See Wis. Stat. § 812.35(3). The Whiteheads contend that this failure of service rendered the garnishments invalid, and that therefore

---

[1]Terri Whitehead is a plaintiff because under Wisconsin law David's earnings were marital property, in which she had an undivided one-half interest.

3

when Messerli & Kramer collected payments from General Dynamics, it collected amounts not permitted by law, in violation of 15 U.S.C. § 1692f(1). The Whiteheads further contend that because the failure of service rendered the garnishments invalid, Messerli & Kramer falsely represented the legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(a), when it represented to General Dynamics, the court, and the Whiteheads that the debt could be collected through the garnishments. For the same reasons, the Whiteheads contend that both Messerli & Kramer and Discover Bank violated Wis. Stat. § 427.104(1)(j) by claiming a right to collect Whitehead's earnings through the garnishments when they knew or had reason to know that such a right did not exist.

The Whiteheads also contend that Messerli & Kramer violated both the FDCPA and the Wisconsin Consumer Act by collecting payments through the garnishments when it knew that Whitehead had filed answers to the garnishments that asserted defenses to the garnishments which the state court had yet to rule on. This claim is based on provisions in the Wisconsin garnishment statute that contain rules that the garnishee must follow when the debtor serves it with an answer. See Wis. Stat. §§ 812.37(3), 812.44(3). The Whiteheads contend that Messerli & Kramer's continuing to collect payments from General Dynamics while the answers were pending caused it to collect amounts not permitted by law, in violation of § 1692f(1). The Whiteheads further allege that Messerli & Kramer's continuing to collect garnishment payments while the answers were pending caused both it and Discover Bank to violate Wis. Stat. § 427.104(1)(j).

In their motion to dismiss, the defendants argue that the plaintiff's claims are barred by the Rooker-Feldman doctrine. In the alternative, they argue that the plaintiffs have failed to state claims upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

## II. DISCUSSION

### A. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine stems from two cases in which the Supreme Court determined that district courts lack subject matter jurisdiction to consider cases that could be characterized as attempts to obtain appellate review of state-court civil judgments. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In these cases, the Court held that Congress vested appellate jurisdiction of such judgments in the Supreme Court exclusively. See 28 U.S.C. § 1257; Rooker, 263 U.S. at 415–16; Feldman, 460 U.S. at 476. In a more recent case, the Supreme Court made clear that this doctrine applies only in "limited circumstances"—namely, in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 291–92 (2005).

In the present case, the defendants argue that the plaintiffs' claims are barred by Rooker-Feldman because they are seeking "damages for alleged harm caused by the decisions and authorizations made by the Walworth County Circuit Court." Defs.' Br. at 7, ECF No. 8. The defendants identify four purported state-court "decisions and authorizations" that supposedly caused the plaintiffs' injuries: (a) the underlying default judgments, which the defendants sought to collect through the earnings garnishments, (b) the "garnishment summonses," (c) the "denial of David Whitehead's motions to reopen the judgment and to assert a counterclaim against Discover," and (d) the "decision not to

5

provide Whitehead relief from Discover's garnishments." Id. at 8. Below, I address whether any of these "decisions and authorizations" triggers the Rooker-Feldman bar.

First, I note that if the plaintiffs were seeking redress for injuries caused by the underlying state-court default judgments, their claims would be barred by Rooker-Feldman. However, they are not seeking such redress. The plaintiffs do not dispute in this case that Discover Bank has valid judgments against David Whitehead which they can collect through lawful means. Instead, the plaintiffs claim that, in collecting these judgments, the defendants committed violations of the FDCPA and the Wisconsin Consumer Act which, in turn, caused them harm—mainly emotional distress and the attorneys' fees incurred to deal with the garnishments. Thus, the plaintiffs are not seeking "review and rejection" of the underlying state-court default judgments. Exxon, 510 U.S. at 284.

The defendants next contend that the plaintiffs are seeking redress for harm caused by the "garnishment summonses." What the defendants describe as garnishment summonses are described in the garnishment statute as "garnishment forms." See Wis. Stat. § 812.35(2). Under the statute, the clerk of court must issue two garnishment forms, which carry the court's seal, if a judgment creditor files a "garnishment notice" with the clerk and pays the required filing fee. Id. The creditor then serves the garnishment forms on the debtor and the garnishee (i.e., the employer). Id. § 812.35(3). The contents of the garnishment notice and the garnishment form are prescribed by statute. Id. §§ 812.44(2) & (3). The garnishment form contains directions that the garnishee must follow, including to determine whether it owes the debtor earnings and to withhold and pay a part of those earnings to the creditor, unless the debtor sends the garnishee an answer. See id. § 812.44(3).

6

In the present case, the plaintiffs are seeking redress for harm caused by the garnishment forms. That is, they claim that they suffered damages, such as emotional distress, attorneys' fees, and the loss of use of their income, because General Dynamics garnished David Whitehead's earnings after the defendants had served it with the garnishment forms. However, the garnishment forms are not "state-court judgments" that could trigger the Rooker-Feldman doctrine. Rather, they are forms issued by the clerk of court after a judgment creditor files a standardized notice and pays the filing fee. The clerk's issuing the forms is simply an administrative or ministerial act, not an adjudication that could be described as a judgment or a decision rendered by a court. See Feldman, 460 U.S. at 476 (stating that Rooker-Feldman does not bar review of ministerial or administrative acts of state courts). In this respect, the clerk's issuing the garnishment forms is analogous to a clerk's issuing a summons in a civil case. And the Seventh Circuit has recognized that a plaintiff may seek damages for harm caused by a state-court summons without running into the Rooker-Feldman bar. See Harold v. Steel, 773 F.3d 884, 886 (7th Cir. 2014) (stating that the harm caused by a creditor's commencing a lawsuit in the wrong venue—i.e., the harm caused by the summons served in that lawsuit—inflicts a harm that is not caused by a state-court judgment). Thus, although the plaintiffs are seeking redress for harm caused by service of the garnishment forms, such forms are not state-court judgments.

The defendants also contend that the plaintiffs are seeking redress for harm caused by the state court's denial of David Whitehead's motion to reopen one of the underlying cases and to assert counterclaims against Discover. That is incorrect. The plaintiffs in this case do not argue, as they did in state court, that the underlying state-court judgments

7

should be set aside on the ground that Discover Bank obtained them improperly. Rather, they accept that the judgments are valid and challenge only the methods that Discover and Messerli & Kramer employed to collect them. And although one of the counterclaims Whitehead sought to raise in state court involves the same alleged violation of the Wisconsin Consumer Act that the plaintiffs assert against Discover in this case, that does not matter. Rooker-Feldman does not prevent a plaintiff from asserting a claim in federal court that he previously raised in state court. See Exxon, 544 U.S. at 293 ("Nor does § 1257 stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court.").

Finally, the defendants argue that the plaintiffs are seeking redress for harm caused by the state court's "decision" not to provide the Whiteheads with relief from the garnishments. This "decision" was the court's statement, reflected in the minutes of the hearing on the motion to reopen, that "the issue related to garnishment can be filed in the small claims case." Armstrong Decl. Ex. 1 at p. 4 of 6. I will assume for the sake of argument that this statement qualifies as a state-court judgment for purposes of the Rooker-Feldman doctrine. Even so, the plaintiffs are not claiming that this decision caused them harm and are not seeking review and rejection of it. Rather, the plaintiffs are seeking redress for harm caused by the garnishments themselves, with which the court had no involvement beyond the clerk's issuance of the garnishment forms. To be sure, had the state court sustained Whitehead's objections to the garnishments and ordered the defendants and General Dynamics to cease garnishing his earnings, some of the harm for which the plaintiffs seek redress in this case would have been prevented. But this only shows that in deferring ruling on Whitehead's objections, the state court failed to provide

8

the plaintiffs with relief from the harm caused by the garnishments. It does not show that the court's decision was itself the cause of the harm, or that the plaintiffs are now seeking review and rejection of the court's decision to defer ruling on the objections.

Accordingly, I conclude that the plaintiffs' claims are not barred by the Rooker-Feldman doctrine.

**B.     Failure to state a claim**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Co. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. This means that "the complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011).

**1.     Claims based on lack of service on debtor**

As noted, several of the plaintiffs' claims are based on the premise that the defendants failed to properly serve the garnishment forms on Whitehead. Under the garnishment statute, a creditor must serve an earnings-garnishment form "upon the debtor" by one of the following means: (1) first class mail; (2) certified mail, return receipt requested;

9

or (3) any means permissible for the service of a summons in a civil action, other than publication. Wis. Stat. § 812.35(3)(a). The complaint alleges that the defendants never served the garnishment forms on Whitehead, either by mail or through personal service. Compl. ¶¶ 20–21.

In their motion to dismiss, the defendants claim that they served the garnishment forms on George Peek, the attorney who represented Whitehead during the state-court proceedings that ended in the default judgments. They point out that under Wis. Stat. § 812.31(1), Wisconsin's general rules of civil practice apply to garnishment actions, and that under those general rules, see Wis. Stat. § 801.14(2), service of any paper other than a summons (and certain other papers) must be made on that party's attorney. Thus, they argue, because Peek represented Whitehead, service on Peek satisfied the garnishment statute's requirement of service upon the debtor. The defendants further argue that because service was proper, their actions during the garnishments were lawful and therefore could not have resulted in violations of either the FDCPA or the Wisconsin Consumer Act.[2]

However, in making this argument, the defendants rely on facts that are not alleged in the complaint. The complaint alleges that the defendants did not serve the garnishment forms on Whitehead by either mail or personal service. The complaint does not allege that the defendants served the garnishment forms on Peek, or that at the time of service Peek represented Whitehead. In an effort to prove that the forms were served on Peek, defense

---

[2]The defendants do not, in their motion to dismiss, dispute that if service on Peek did not satisfy the service requirements of the garnishment statute, the plaintiffs have stated claims under the FDCPA and the Wisconsin Consumer Act.

10

counsel has submitted a declaration that attaches letters from Messerli & Kramer that are addressed to Peek and that state that the garnishment forms are enclosed. See Armstrong Decl. Exs. 2 & 8. However, a court may not in connection with a motion to dismiss under Rule 12(b)(6) consider matters outside the complaint without converting the motion into one for summary judgment. Fed. R. Civ. P. 12(d). Although there are exceptions to this rule, the defendants' declaration and the attached letters do not fall within any such exception. One exception is for documents that are referred to in the complaint, unquestionably authentic, and central to the plaintiff's claim. See, e.g., Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002). The defendants' declaration and the attached letters do not meet any of these criteria. Another exception is for documents of which the court can take judicial notice. See 520 S. Michigan Ave. Assocs., Ltd. v. Shannon, 549 F.3d 1119, 1138 n.14 (7th Cir. 2008). However, I am not aware of any authority that would allow me to take judicial notice of letters sent by one lawyer to another.[3] Anyway, even if I could take judicial notice of the letters, that would not establish that the letters were actually served on Peek. Although the letters are addressed to Peek, that does not conclusively prove that someone actually put them in envelopes and mailed them or had them served by other means.

Moreover, even if I could consider the letters and accept them as proof that the garnishment forms were served on Peek, the letters are not sufficient to prove that Peek actually represented Whitehead at the time of service. The defendants assume that Peek represented Whitehead at that time because he had represented Whitehead in the

---

[3]There is no indication that these letters were filed with the court and became public records. See General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1081 (7th Cir. 1997) (holding that court may take judicial notice of certain kinds of court records).

11

underlying civil cases that resulted in the default judgments. But those judgments were entered two years before the garnishments were commenced, and thus it is probable that Peek no longer represented Whitehead at the time of service. I therefore may not accept without proof the proposition that Peek represented Whitehead at the time the defendants served the garnishment forms. And unless Peek represented Whitehead at that time, service on Peek would not have complied with Wis. Stat. § 814.14(2).[4] For this reason, the defendants' motion to dismiss the plaintiffs' claims based on lack of proper service of the garnishment forms will be denied.

## 2. Claims based on garnishments following service of answer

The plaintiffs' remaining claims are based on their allegation that the defendants continued to accept payments from General Dynamics after Whitehead had filed answers to the garnishment complaints, which the plaintiffs contend was contrary to the garnishment statute. The statute provides that when the debtor serves an answer to the garnishment on the garnishee, "the garnishee shall accept as true and binding any exemption claimed in the debtor's answer" unless the garnishee is "served with an order of the court directing otherwise." Wis. Stat. § 812.37(3). "Exemption" is governed by another part of the garnishment statute, which states that the debtor's earnings may be partially or completely exempt from garnishment. See Wis. Stat. § 812.34. In his answer, Whitehead did not claim any partial or complete exemption under § 812.34, but he did assert several defenses to the

---

[4] The plaintiffs argue that even if service on Peek complied with Wis. Stat. § 814.14(2), the defendants would still not have effected proper service because service under § 814.14(2) is not sufficient to comply with the service requirements of the garnishment statute. I need not consider this argument because, as discussed, I cannot at this stage of the case assume that the defendants served Peek or that Peek represented Whitehead at the time of such service.

12

garnishments.  See Armstrong Decl. Ex. 3.[5]  The part of the garnishment statute that requires a garnishee to accept any exemption claimed in the answer as true and binding does not say anything about defenses.  However, the official garnishment form that appears in the garnishment statute and that the creditor must serve on the garnishee instructs the garnishee that "[i]f the debtor's answer form claims a complete exemption <u>or defense</u>, do not withhold or pay to the creditor any part of the debtor's earnings under this garnishment unless you receive an order of the court directing you to do so."  Wis. Stat. § 812.44(3) (emphasis added).

In the present case, the complaint alleges that after Whitehead served his answer on General Dynamics, he asked General Dynamics to stop the garnishment pending a court hearing on the defenses asserted in the answer.  Compl. ¶ 15.  According to the complaint, General Dynamics told Whitehead that it could not cease the garnishment unless it received a court order or a stipulation of the parties.  Id. ¶ 16.  Whitehead then asked Discover and Messerli & Kramer to enter into a stipulation to stop the garnishment pending a hearing on the answer.  Id. ¶ 17.  However, neither Discover nor Messerli & Kramer responded to this request, and as a result General Dynamics continued to garnish Whitehead's earnings and send them to the defendants.  Id. ¶ 18.

The defendants contend that because § 812.37(3) mentions only exemptions, General Dynamics was permitted to continue the garnishments while the answer was pending.  Therefore, they argue, the defendants could not have violated the FDCPA or the Wisconsin Consumer Act by accepting payments from General Dynamics while the answer

---

[5] The garnishment answer was filed with the state court and is a public record.  Thus, the answer's contents may be judicially noticed.  See General Electric, 128 F.3d at 1081.

13

was pending. However, for the reasons explained below, I conclude that the Wisconsin garnishment statute requires a garnishee to cease garnishing a debtor's earnings while an answer asserting defenses to the garnishment is pending.

When interpreting statutes, "[c]ontext is important to meaning," as is "the structure of the statute in which the operative language appears." State ex rel. Kalal v. Circuit Court for Dane County, 271 Wis.2d 633, 663 (2004). Therefore, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id. Here, when § 812.37(3) is read in isolation, it appears to imply that although a garnishee is bound by an exemption claimed in an answer until the court rules on the exemption, the garnishee is free to disregard any defenses to the garnishment that are asserted in the answer. However, the official form embodied in § 812.44(3) clearly states that a garnishee is bound by both exemptions and defenses. Thus, when these provisions of the garnishment statute are read together, it appears that the garnishee is required to accept both exemptions and defenses as true pending a court ruling on the answer. And indeed, it seems absurd to require a garnishee to honor a claimed exemption but to allow it to ignore a defense. If the defense is valid, it has the same effect as a complete exemption, and there is no apparent reason to treat defenses differently from exemptions. Thus, to avoid an "absurd or unreasonable result[]," Kalal, 271 Wis. 2d at 663, a court must give effect to the language in § 812.44(3) and require garnishees to accept any defense asserted in an answer as valid until the court rules otherwise.

14

This result is confirmed by the official comments to the garnishment statute.[6] The comment to § 812.37(3) itself indicates that the drafters of the statute intended to require garnishees to accept defenses in an answer as true. This comment states that a debtor may in an answer either assert a defense or claim an exemption. Wis. Stat. § 812.37, cmt.[7] It then states that the garnishee must "treat the debtor's answer as true unless otherwise ordered by the court." Notably, the comment does not state that the garnishee must treat the answer as true only if it asserts an exemption, which implies that the drafters intended garnishees to treat both exemptions and defenses as true. Moreover, the comment to the next provision of the statute, which allows a creditor to challenge a debtor's answer, explicitly states that both exemptions and defenses are "binding on the garnishee" unless the creditor successfully challenges the debtor's answer. Wis. Stat. § 812.38(1)(a), cmt. The comment states that the purpose of § 812.38(1)(a) is to "permit[] the creditor to challenge the debtor's claim of exemption or defense, which is otherwise binding on the garnishee." Id. (emphasis added). Thus, the comments leave no doubt that the drafters of the garnishment statute intended to require garnishees to accept defenses as true unless a creditor successfully challenges the defense in court.

---

[6]Under Wisconsin law, a court may examine official comments that accompany a statute to determine legislative intent. Einhorn v. Culea, 235 Wis.2d 646, 661 n.19 (2000).

[7]The full text of the comment to Wis. Stat. § 812.37 provides as follows:

> This section allows the debtor to assert a defense to the earnings garnishment, or to claim a complete exemption, by delivering or mailing an answer to the garnishee at any time before or during the effective period of the earnings garnishment. The garnishee must promptly send a copy of the answer to the creditor, and treat the debtor's answer as true until otherwise ordered by the court.

15

Accordingly, if the allegations of the plaintiffs' complaint are true, General Dynamics should have ceased garnishing Whitehead's earnings once it was served with Whitehead's answer, which asserted defenses to the garnishments. Of course, General Dynamics is not a defendant to this suit. But Messerli & Kramer's having accepted payments through the garnishments that General Dynamics was prohibited by law from sending could be described as "the collection of any amount . . . [not] permitted by law." Thus, I conclude that the allegations of the complaint pertaining to these matters state a claim against Messerli & Kramer for violation of 15 U.S.C. § 1692f(1). Similarly, Discover Bank's and Messerli & Kramer's continuing to collect payments through the garnishment after Whitehead informed them that an answer was pending and asked them to stipulate that General Dynamics could cease garnishing Whitehead's wages could be described as "claim[ing] . . . a right with knowledge or reason to know that the right does not exist." Thus, I conclude that the allegations of the complaint with respect to these matters state a claim against the defendants for violation of Wis. Stat. § 427.104(1)(j). For these reasons, the defendants' motion to dismiss the claims based on the allegation that the defendants continued to collect Whitehead's earnings despite the fact that an answer was pending will be denied.[8]

---

[8] The defendants point out that the plaintiffs could have sought relief against General Dynamics or Discover Bank in state court under the garnishment statute, see Wis. Stat. § 812.38(1)(c), and that they have not done so. Although this may be true, the defendants do not explain why it matters. And I am aware of no reason why the plaintiffs' failure to pursue remedies available under the garnishment statute would preclude them from pursuing relief in federal court under the FDCPA and the Wisconsin Consumer Act.

16

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion to dismiss the complaint is **DENIED**.

Dated at Milwaukee, Wisconsin, this 7th day of August, 2015.

s/ Lynn Adelman

_____
LYNN ADELMAN
District Judge