UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID WHITEHEAD and
TERRI WHITEHEAD,
    Plaintiffs,

 v.               Case No. 15-C-0261

DISCOVER BANK and
MESSERLI & KRAMER, P.A.,
    Defendants.

---

## DECISION AND ORDER

The plaintiffs, David and Terri Whitehead, claim that the law firm of Messerli & Kramer, P.A., violated the Fair Debt Collection Practices Act and the Wisconsin Consumer Act during the course of two garnishment actions filed in Wisconsin state court. The plaintiffs also claim that Messerli & Kramer's actions caused Discover Bank to violate the Wisconsin Consumer Act. Before me now is the defendants' motion for summary judgment.

## I. BACKGROUND

David Whitehead defaulted on two separate debts to Discover Bank. Terri Whitehead is David's spouse. Discover retained Messerli & Kramer to collect Mr. Whitehead's accounts.

On December 14, 2010, Messerli & Kramer commenced an action in Wisconsin state court against Mr. Whitehead on behalf of Discover to collect one of the two delinquent accounts. On January 3, 2011, an attorney, George Peek, entered a notice of appearance in the action to defend Mr. Whitehead. On January 6, 2011, Messerli &

1

Kramer commenced a second action in the same court against Whitehead on behalf of Discover to collect the other delinquent account. Attorney Peek entered his appearance in that action on January 26, 2011. By July 2011, the parties had settled both of these cases and entered into stipulations that provided terms for Mr. Whitehead to pay the delinquent accounts. However, a short time later, Discover deemed Whitehead in default under the stipulated payment schedules. On December 12, 2011, Discover, still represented by Messerli & Kramer, obtained a judgment against Whitehead in one of the state cases. On January 5, 2012, Discover obtained a judgment against Whitehead in the other case.

After the judgments were entered, Attorney Peek continued to be listed as Whitehead's counsel of record. Peek continued to represent Whitehead until April 8, 2013, when Whitehead informed Peek that he had obtained new counsel and wanted Peek to transfer the file to his new counsel. Dep. of George Peek at 26–27, ECF No. 35. Peek did not file notices of withdrawal in the state-court cases, and Whitehead's new counsel did not immediately file notices of appearance in those cases. Neither Peek nor Whitehead's new counsel notified Discover or Messerli & Kramer that the Whiteheads had obtained new counsel.

On February 25, 2014, Messerli & Kramer learned that Whitehead had obtained employment at a company called General Dynamics. Because Whitehead had yet to satisfy the outstanding judgments, Messerli & Kramer commenced two earnings garnishment actions in the state court that had entered the judgments—one garnishment for each judgment. The garnishments were filed under the same case numbers as the actions that resulted in the judgments. Messerli & Kramer commenced

2

the first earnings garnishment on March 5, 2014, and it commenced the second earnings garnishment on March 26, 2014.

Under Wisconsin law, when a creditor commences an earnings garnishment, the clerk of court issues the creditor two "earnings garnishment forms." Wis. Stat. § 812.35(2). The creditor must serve one of the garnishment forms on the garnishee, who in this case was General Dynamics, Whitehead's employer, and must serve the other form "upon the debtor." Wis. Stat. § 812.35(3)–(4). The contents of the garnishment form are prescribed by statute. *See* Wis. Stat. § 812.44(3). The form directs the garnishee to pay the creditor 20% of the debtor's disposable earnings for each pay period covered by the garnishment. The form contains other instructions for the garnishee. As is relevant to this case, the form instructs the garnishee that it should not withhold any of the debtor's earnings if the garnishee receives an answer to the garnishment form from the debtor that "claims a complete exemption or defense." Wis. Stat. § 812.44(3), ¶ 4.

After commencing the garnishments, Messerli & Kramer served the garnishment forms on General Dynamics. Messerli & Kramer also served the garnishment forms on Attorney Peek, thinking that he was still Whitehead's counsel for purposes of the two delinquent accounts. Messerli & Kramer did not serve the garnishment forms on David Whitehead personally. Whitehead first learned of the garnishments when General Dynamics informed him that it would be garnishing his wages. Whitehead claims that learning of the garnishments from his employer rather than by service of the garnishment forms caused him emotional distress.

3

On March 28, 2014, Whitehead, now represented by new counsel, filed an answer to the garnishment, a counterclaim against Discover Bank, and a motion to reopen the original judgment in one of the two cases. On April 24, 2014, Whitehead's new counsel filed an answer, counterclaim, and motion to reopen in the other case. In his answers to the garnishments, Whitehead did not claim that his earnings were exempt from garnishment, but he did assert several defenses to the garnishments. As noted, the garnishment form instructs the garnishee that if it receives an answer from the debtor claiming a complete exemption or defense, the garnishee must not withhold the debtor's earnings. However, General Dynamics did not follow this instruction. On March 31, 2014, General Dynamics began withholding Whitehead's earnings in connection with one of the garnishments and sending them to Messerli & Kramer. On July 7, 2014, Messerli & Kramer began receiving payments from General Dynamics in connection with the other garnishment.

Meanwhile, the court in the first garnishment scheduled a hearing for April 29, 2014. On April 11, 2014, a paralegal at Whitehead's new counsel's law firm sent an email to Messerli & Kramer regarding the garnishment on which General Dynamics had begun withholding earnings. The email stated:

> Attached is the notice of motion and motion to reopen and allow counterclaims in the above mentioned case. We believe that the garnishment in this case should be stayed pending the outcome of that hearing on April 29, 2014, and are wondering if you would stipulate to that. Please let me know your feelings on this as soon as possible so I can begin drafting a stipulation if need be.

Decl. of Brian Chou Ex. 1010, ECF No. 33-10. As far as the summary-judgment record reveals, Messerli & Kramer did not respond to this email. At the court hearing on April

4

29, 2014, the court denied Whitehead's motion to reopen the case and to assert a counterclaim.

In the other garnishment action, a hearing was scheduled for August 8, 2014. However, on August 6, 2014, Whitehead filed a petition to amortize his debts under Wis. Stat. § 128.21. Under Wisconsin law, the filing of this petition prevented the defendants from continuing to garnish Whitehead's wages. *See* Wis. Stat. § 128.21(2). The parties therefore asked the court to cancel the August 8 hearing, and so far as the summary-judgment record reveals, no further action was taken on either garnishment following the filing of the petition. Presumably, Whitehead paid the delinquent Discover Bank accounts in full pursuant to his § 128.21 amortization plan.

In March 2015, the Whiteheads commenced the present action, alleging that certain actions taken by Messerli & Kramer during the garnishments resulted in violations of the FDCPA and the Wisconsin Consumer Act. First, the Whiteheads claim that by serving the garnishment forms on Attorney Peek rather than on Mr. Whitehead, Messerli & Kramer and Discover Bank violated the service requirements of the garnishment statute. The Whiteheads contend that this violation of the garnishment statute amounted to the use of "an unfair or unconscionable means to collect or attempt to collect any debt," in violation of § 808 of the FDCPA, 15 U.S.C. § 1692f. They also contend that this conduct violated the Wisconsin Consumer Act. Second, the Whiteheads claim that state law prohibited Messerli & Kramer and Discover Bank from accepting payments from General Dynamics while Mr. Whitehead's answers to the garnishments were pending. They argue that, by accepting such payments, Messerli & Kramer collected an amount not "permitted by law," in violation of § 808(1) of the

5

FDCPA, 15 U.S.C. § 1692f(1). They also argue that, by accepting such payments, Messerli & Kramer and Discover Bank violated the Wisconsin Consumer Act.

In an earlier stage of this case, the defendants moved to dismiss the plaintiffs' complaint on the ground that the plaintiffs' claims were barred by the *Rooker-Feldman* doctrine, and also on the ground that the plaintiffs had failed to state claims upon which relief could be granted. I rejected both grounds for dismissing this suit. *See Whitehead v. Discover Bank*, 118 F. Supp. 3d 1111 (E.D. Wis. 2015). The defendants now move for summary judgment on the plaintiffs' claims.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, I take evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

**A. *Rooker-Feldman***

In their motion for summary judgment, the defendants ask me to reconsider my earlier determination that the plaintiffs' claims are not barred by the *Rooker-Feldman* doctrine. This doctrine stems from two cases in which the Supreme Court determined that district courts lack subject matter jurisdiction to consider cases that could be characterized as attempts to obtain appellate review of state-court civil judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In these cases, the Court held that Congress vested

6

appellate jurisdiction of such judgments in the Supreme Court exclusively. *See* 28 U.S.C. § 1257; *Rooker*, 263 U.S. at 415–16; *Feldman*, 460 U.S. at 476. In a more recent case, the Supreme Court made clear that this doctrine applies only in "limited circumstances"—namely, in cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 291–92 (2005).

In the present case, the defendants contend that the plaintiffs are complaining of injuries caused by the garnishment forms, which the defendants contend are state-court judgments for purposes of the *Rooker-Feldman* doctrine. In my decision on the defendants' motion to dismiss, I agreed that the plaintiffs were complaining of injuries caused by the garnishment forms, but I concluded that such forms were not state-court judgments for purposes of the *Rooker-Feldman* doctrine. *See Whitehead*, 118 F. Supp. 3d at 1115–16. However, since the date of my decision on the motion to dismiss, Magistrate Judge Joseph of this court considered the question of whether a Wisconsin garnishment form qualifies as an order or judgment for purposes of *Rooker-Feldman* and concluded that it does. *See Gonzales v. Kohn Law Firm, S.C.*, No. 13-CV-168, 2015 WL 5794157, at *7 (E.D. Wis. Oct. 2, 2015). In another case decided since the date on which I ruled on the motion to dismiss, Judge J.P. Stadtmueller of this court agreed with Magistrate Judge Joseph's conclusion that the garnishment form, which Judge Stadtmueller described as a "garnishment order," is a state-court judgment for *Rooker-Feldman* purposes. *See Andress v. Daubert Law Firm LLC*, 144 F.Supp.3d 1034, 1040 n.5 (E.D. Wis. 2015). Judge Stadtmueller's decision was appealed to the

7

Seventh Circuit, and that court affirmed in an unpublished disposition, stating that claims for injuries caused by the "garnishment orders" were barred by *Rooker-Feldman*. *See Andress v. Daubert Law Firm, LLC*, __ F. App'x __, 2016 WL 3470990, at *1 (7th Cir. June 24, 2016). It thus appears that the Seventh Circuit considers the garnishment forms to be judgments for purposes of *Rooker-Feldman*. I will therefore reconsider my earlier decision and conclude that, to the extent the plaintiffs are complaining of injuries caused by the garnishment forms, their claims are barred by *Rooker-Feldman* and must be dismissed for lack of subject matter jurisdiction.

However, upon closer examination of the nature of the plaintiffs' claims, I conclude that they are not complaining of injuries caused by the garnishment forms and are not "inviting district court review and rejection of" the garnishment forms. *Exxon Mobil Corp.*, 544 U.S. at 284. First, the plaintiffs' claim alleging improper service of the garnishment forms does not complain of an injury caused by the forms. Rather, the plaintiffs complain of the injury caused by Messerli & Kramer's actions in serving the forms on Attorney Peek rather than on Mr. Whitehead, *i.e.*, the emotional distress that Mr. Whitehead allegedly suffered when he learned about the existence of the garnishment actions from his employer rather than through service of the garnishment forms. To resolve this claim, I will not have to review and reject the garnishment forms. Rather, I will need to review Messerli & Kramer's conduct in serving the forms and determine whether such conduct resulted in violations of the FDCPA and the Wisconsin

8

Consumer Act. Thus, the plaintiffs' claim alleging improper service of the garnishment forms is not barred by the *Rooker-Feldman* doctrine.[1]

Second, the plaintiffs' claim that Messerli & Kramer improperly collected payments from General Dynamics while Mr. Whitehead's answers to the garnishments were pending does not complain of an injury caused by the forms, and such claim does not require me to review and reject the forms. Rather, this claim alleges that General Dynamics *violated* the forms' terms by sending payments to Messerli & Kramer while the answers were pending, and that therefore when Messerli & Kramer accepted the payments, it collected amounts not permitted by law. In other words, the plaintiffs are not seeking appellate review of the garnishment forms, but rather are alleging that the forms did not authorize the defendants' conduct in the first place. The injuries they complain of—the time value of the wrongfully garnished funds and the emotional distress the plaintiffs allegedly experienced from having the funds withheld—were caused not by the forms, but by General Dynamics's failure to abide by state law and the defendants' subsequent acceptance of the wrongfully withheld funds. Accordingly, this claim is not barred by the *Rooker-Feldman* doctrine.

**B.   Merits**

---

[1] In deciding the defendants' motion to dismiss, I understood the plaintiffs to be arguing that improper service of the garnishment forms rendered both garnishment actions invalid, and that therefore Messerli & Kramer's actions in collecting the garnishment payments violated the FDCPA because, in accepting such payments, Messerli & Kramer collected amounts not permitted by law. It is not clear whether the plaintiffs intend to pursue this line of argument, as they do not mention it in their response to the defendants' motion for summary judgment. However, to the extent that the plaintiffs intend to claim that improper service rendered the collection of garnishment payments illegal, such claim would be barred by *Rooker-Feldman*. That is because the plaintiffs would be complaining of injuries caused by the garnishment forms, *i.e.,* the payments made by General Dynamics pursuant to the forms, and would be asking me to declare the forms invalid due to lack of proper service.

9

### 1. Improper Service

In their briefs, the parties dispute whether, as a matter of Wisconsin law, Messerli & Kramer was required to serve Mr. Whitehead with the garnishment forms, or whether service on Attorney Peek was proper. However, I conclude that I do not have to resolve this question because, even if service on Peek was improper as a matter of Wisconsin law, it did not result in a violation of either the FDCPA or the Wisconsin Consumer Act.

Section 808 of the FDCPA provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This section then identifies certain specific conduct that amounts to unfair or unconscionable means. Improperly serving court papers is not identified as specific conduct that is unfair or unconscionable. Moreover, under the facts of this case, Messerli & Kramer's serving the garnishment forms on Peek rather than Whitehead could not reasonably be considered unfair or unconscionable. The Wisconsin garnishment statute does not state that a creditor must serve the garnishment form on the debtor even if the debtor is represented by an attorney, *see* Wis. Stat. § 812.35(3)(a), and no court has interpreted the statute to require service on the debtor rather than on his or her attorney. Further, Messerli & Kramer had reason to think that Peek still represented Whitehead at the time it initiated the garnishments, in that Peek had represented Whitehead in the cases that resulted in the underlying judgments and no one informed Messerli & Kramer or Discover Bank that Whitehead had obtained new counsel. Finally, Messerli & Kramer's serving Peek rather than Whitehead did not result in Discover Bank's obtaining an unfair advantage in the garnishment actions. Rather, Whitehead still obtained prompt notice of the garnishments, and his attorney filed

answers to the garnishments before General Dynamics sent any of his earnings to Messerli & Kramer. The plaintiffs do not identify any way in which the lack of proper service prejudiced Mr. Whitehead's defense to the garnishments.

The only harm that the plaintiffs claim they suffered from the allegedly improper service is the emotional distress that Mr. Whitehead allegedly experienced when he learned about the garnishments from his employer, rather than from service of the garnishment forms. *See* Pls.' Statement of Add'l Facts ¶¶ 3–4. Whitehead claims that he suffered this emotional distress because he was unable to approach his manager at General Dynamics and tell him to expect the garnishment paperwork before General Dynamics was served with it. *See* Whitehead Dep. at 58:1–14. However, the service provisions of the garnishment statute are not designed to ensure that the debtor receives notice of the garnishments before his or her employer. Rather, under the statute, the creditor can wait as long as seven business days *after* the date of service on the garnishee to serve the debtor. *See* Wis. Stat. § 812.35(4)(c). Moreover, even if Messerli & Kramer had served Whitehead and General Dynamics simultaneously, General Dynamics likely would have received the garnishment forms before Whitehead had been able to warn his manager to expect them. Messerli & Kramer's failure to serve the garnishment forms on Whitehead rather than on Peek therefore cannot reasonably be regarded as the use of an "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

The plaintiffs also contend that Messerli & Kramer's failure to serve Whitehead personally resulted in a violation of § 807 of the FDCPA, which prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection

with the collection of any debt." 15 U.S.C. § 1692e. However, it is not reasonable to characterize the failure to serve Whitehead personally as a "false, deceptive, or misleading representation or means." Simply put, the failure to properly serve the garnishment forms did not involve any false, deceptive, or misleading conduct. Accordingly, Messerli & Kramer's service of the forms on Peek did not result in a violation of § 1692e.

As for the Wisconsin Consumer Act, it prohibits a creditor from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist." Wis. Stat. § 427.104(j). Serving a garnishment form on the wrong person cannot reasonably be construed as a violation of this provision. Accordingly, service on Peek did not result in either Messerli & Kramer or Discover Bank committing a violation of the Wisconsin Consumer Act.

**2. Collecting Payments While Answers Pending**

The Wisconsin earnings garnishment statute provides that, unless the garnishee is "served with an order of the court directing otherwise," the garnishee must "accept as true and binding any exemption claimed in the debtor's answer . . . received before payment is made to the creditor." Wis. Stat. § 812.37(3). Further, the garnishment form contains the following instruction to the garnishee: "If the debtor's answer form claims a complete exemption or defense, do not withhold or pay to the creditor any part of the debtor's earnings under this garnishment unless you receive an order of the court directing you to do so." Wis. Stat. § 812.44(3), ¶ 4. In my prior order, I interpreted these provisions as meaning that General Dynamics should not have garnished Whitehead's earnings once it was served with Whitehead's answers, which asserted

12

defenses to the garnishments. *Whitehead*, 118 F. Supp. 3d at 1118–20. I also concluded that Messerli & Kramer's accepting the payments from General Dynamics "could be described" as the collection of an amount prohibited by law, in violation of 15 U.S.C. § 1692f(1), and also as claiming a right with knowledge or reason to know that the right does not exist, in violation of Wis. Stat. § 427.104(1)(j). *Id.* at 1120. I therefore concluded that the plaintiffs had stated valid claims under the FDCPA and Wisconsin Consumer Act. However, I did not conclude that, as a matter of law, accepting the payments amounted to violations of both the FDCPA and the Wisconsin Consumer Act. For the reasons below, I now conclude that the defendants' having accepted the payments did not result in violations of these statutes.

The earnings garnishment statute does not state that a creditor may not accept garnishment payments that the garnishee wrongfully withheld from the debtor's earnings. Rather, the statute provides that the garnishee is liable to the debtor for actual damages if it "deducts more from the debtor's earnings than is authorized by this subchapter." Wis. Stat. § 812.41(2). No similar provision grants the debtor a claim against the creditor for accepting earnings that the garnishee wrongfully deducted. Nor does the statute instruct the creditor to return wrongfully deducted earnings to the garnishee or to forward them to the debtor. The statutory scheme thus indicates that if the garnishee wrongfully withholds the debtor's earnings and sends them to the creditor, the creditor may accept the payments, and the debtor's remedy for having his earnings wrongfully garnished lies against the garnishee. Alternatively, the debtor may seek an order from the garnishment court directing the garnishee to cease withholding earnings until the court resolves the matters raised by the answer. *See* Wis. Stat. § 812.38(1)(c)

13

(stating that "[a]ny party to the earnings garnishment may move the court to order any other party to comply with the provisions of this subchapter, or for other equitable relief"). For these reasons, I conclude that Wisconsin law allowed Messerli & Kramer and Discover Bank to accept the garnishment payments sent by General Dynamics. It follows that, in accepting those payments, Messerli & Kramer did not collect an amount not "permitted by law," in violation of § 1692f. It also follows that, in accepting the payments, Messerli & Kramer and Discover Bank did not claim a right with knowledge or reason to know that the right did not exist, in violation of Wis. Stat. § 427.104(1)(j).

The plaintiffs point out that, in this case, Messerli & Kramer did more than merely collect the payments that General Dynamics wrongfully withheld: it also ignored the plaintiffs' request to stipulate that the first garnishment should be "stayed" pending the outcome of a hearing that the court had scheduled for the end of April 2014. The plaintiffs' argument seems to be that Messerli & Kramer engaged in unfair or unconscionable conduct by refusing to enter into the stipulation while knowing that General Dynamics was mistakenly sending garnishment payments. For purposes of this argument, I will assume that if Messerli & Kramer knew that General Dynamics was violating the garnishment statute by sending payments despite the pendency of an answer, then Messerli & Kramer's ignoring the plaintiffs' request to stipulate to a stay of the garnishment could be deemed unfair or unconscionable. However, as I discussed in my decision on the motion to dismiss, the earnings garnishment statute contains conflicting provisions regarding the effect of an answer on the garnishee's duties. On the one hand, the statute states that a garnishee must "accept as true and binding any exemption claimed in the debtor's answer" but does not state that the garnishee must

14

also accept as true and binding a defense alleged in an answer. Wis. Stat. § 812.37(3). On the other hand, the garnishment form instructs the garnishee not to withhold any of the debtor's earnings if it receives an answer that "claims a complete exemption *or defense*." Wis. Stat. § 812.44(3), ¶ 4 (emphasis added). Until I decided the motion to dismiss, no court had interpreted these provisions as requiring a garnishee to stop withholding the debtor's earnings when served with an answer that asserts a defense but does not claim an exemption. Thus, at the time that Messerli & Kramer ignored the plaintiffs' request to stipulate to a stay of the garnishment, it was not clear that General Dynamics had sent the payments in violation of its duties under the garnishment statute. Moreover, the email in which the paralegal stated that the plaintiffs "believe[d]" the garnishment should be stayed did not identify the basis for their belief or argue that the garnishment statute requires the garnishee to stop deducting the debtor's earnings once it is served with an answer asserting a defense. Rather, the email merely mentioned that the plaintiffs had filed a motion to reopen the underlying judgment, which was not itself a basis for staying the garnishment. Under these circumstances, Messerli & Kramer cannot be charged with knowledge that General Dynamics was making deductions from Whitehead's earnings in violation of the garnishment statute. Its refusal to stipulate to a stay of the garnishments therefore cannot reasonably be characterized as unfair or unconscionable conduct.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendants' motion for summary judgment is **GRANTED**. The Clerk of Court shall enter final judgment.

15

Dated at Milwaukee, Wisconsin, this 22nd day of November, 2016.

        s/Lynn Adelman        
        LYNN ADELMAN
        District Judge

16

Case 2:15-cv-00261-LA   Filed 11/22/16   Page 16 of 16   Document 47